JACKSON LEWIS P.C.
    666 Third Avenue
    29th Floor
    New York, New York 10017
    (212) 545-4000
Attorneys of Record:
    Jennifer B. Courtian
    Kevin P. Connolly

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| STEVEN NACHSHEN,<br><br>                              Plaintiff,<br><br>        v.<br><br>DECKER ASSOCIATES LLC and DYLAN'S<br>CANDYBAR, LLC<br><br>                              Defendants. | Civ. No. 1:17-cv-00150 (KPF)<br><br>**MEMORANDUM OF LAW IN<br>SUPPORT OF DEFENDANT DYLAN'S<br>CANDYBAR, LLC's MOTION FOR<br>SUMMARY JUDGMENT AND TO<br>PRECLUDE PLAINTIFF FROM<br>PRESENTING TESTIMONY AND<br>EVIDENCE IN OPPOSING THIS<br>MOTION OR AT TRIAL** |

Respectfully submitted,

JACKSON LEWIS LLP
    666 Third Avenue, 29th Floor
    New York, New York 10017
    (212) 545-4000

Dated: January 12, 2018                By: _____
      New York, New York                    Jennifer B. Courtian
                                            Kevin Connolly

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ......................................................................... 1

PROCEDURAL AND FACTUAL BACKGROUND ...................................................... 3

SUMMARY JUDGMENT STANDARD .................................................................. 6

ARGUMENT ............................................................................................ 6

POINT I.     Plaintiff Fails to Present Any Evidence That He Has Standing to Pursue His Claims. ............................................................................... 6

POINT II.     Plaintiff Failed to Present Sufficient Evidence That He Is Disabled. .................. 8

POINT III.     Plaintiff's ADA Claims Relating to the Removal of Alleged Architectural Barriers Should Be Dismissed As A Matter of Law ........................................ 10

      A.     Plaintiff's Claim Regarding The Sidewalk Leading Into The Store Should Be Dismissed. ........................................................................ 13

           1.     The "Readily Achievable" Standard Applies In Evaluating Plaintiff's Claim Regarding the Sidewalk. ....................................................... 14

           2.     Plaintiff Fails to Establish That Replacing the Sidewalk is "Readily Achievable." ....................................................................... 14

      B.     Plaintiff's Claims Regarding Candy Bins Should Be Dismissed As A Matter Of Law. ....................................................................... 15

           1.     Plaintiff Cannot Establish That Replicating or Changing the Candy Bins is "Readily Achievable." ..................................................... 16

           2.     Even if the 2010 Standards Applied, They Do Not Require All the Candy Bins Be Placed Within Reach Range. .................................... 17

           3.     Plaintiff's Claim Relating to the Candy Bins Also Should be Dismissed Because Dylan's Staff Provides Merchandise Retrieval Upon Request. .................................................................... 18

      C.     Plaintiff's Claim Relating to the "Personalize It" iPads Should be Dismissed. .......................................................................... 18

           1.     Plaintiff Cannot Establish That The Relief Sought is "Readily Achievable." ....................................................................... 18

           2.     Plaintiff's Claim Related to the iPads Also Should be Dismissed Because the iPads Can be Removed From Their Enclosures, Upon Request. ........................................................................... 19

      D.     Plaintiff's Claim Relating to the Routes Inside the Store Should Be Dismissed. .......................................................................... 19

      E.     Plaintiff's Claims Regarding The Service Counters, the Photo Booth, the Dining Surfaces and the Water Fountain Should be Dismissed. ............... 21

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

Access 4 All, Inc. v. G & T Consulting Co., LLC,
06 Civ. 13736 (DF), 2008 U.S. Dist. LEXIS 30594 (S.D.N.Y. March 28,
2008) ...................................................................................................................7, 8

Anderson v. Liberty Lobby, Inc.,
477 U.S. 242 (1986)...........................................................................................6, 9

Burnett v. Océ N. Am.,
No. 11 Civ. 6894 (ER), 2014 U.S. Dist. LEXIS 133674 (S.D.N.Y. Sep. 11,
2014) ...............................................................................................................29, 30

Camarillo v. Carrolls Corp.,
518 F.3d 153 (2d. Cir. 2008)........................................................................7, 8, 26

Carnegie-Mellon University v. Cohill,
484 U.S. 343 (1988)...............................................................................................28

Carter v. Nassau Cty. Interim Fin. Auth.,
730 F.3d 150 (2d Cir. 2013)..................................................................................28

Celotex Corp. v. Catrett,
477 U.S. 317 (1986)................................................................................................6

Chapman v. Pier I Imports (U.S.), Inc.,
779 F.3d 1001 (9th Cir. 2015) ...................................................................20, 21, 24

De La Rosa v. 600 Broadway Partners, LLC,
13 Civ. 6390 (PGG), 2016 U.S. Dist. LEXIS 42272 (S.D.N.Y. March 30,
2016) ............................................................................................................. *passim*

Design Strategy, Inc. v. Davis,
469 F.3d 284 (2d. Cir. 2006)................................................................................29

Francis v. Lo-Do Corp.,
No. 14 Civ. 5422 (KBF), 2014 U.S. Dist. LEXIS 173479 (S.D.N.Y. December
5, 2014) ............................................................................................................25, 26

Valencia ex rel. Franco v. Lee,
316 F.3d 299 (2d Cir. 2003)..................................................................................28

Gilkerson v. Chasewood Bank,
1 F. Supp. 3d 570, 589 (S.D. Tex. 2014) .........................................................20, 21, 24

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

Access 4 All, Inc. v. G & T Consulting Co., LLC,
  06 Civ. 13736 (DF), 2008 U.S. Dist. LEXIS 30594 (S.D.N.Y. March 28,
  2008) ...........................................................................................................................7, 8

Anderson v. Liberty Lobby, Inc.,
  477 U.S. 242 (1986)...........................................................................................................6, 9

Burnett v. Océ N. Am.,
  No. 11 Civ. 6894 (ER), 2014 U.S. Dist. LEXIS 133674 (S.D.N.Y. Sep. 11,
  2014) .........................................................................................................................29, 30

Camarillo v. Carrolls Corp.,
  518 F.3d 153 (2d. Cir. 2008)........................................................................................7, 8, 26

Carnegie-Mellon University v. Cohill,
  484 U.S. 343 (1988)...............................................................................................................28

Carter v. Nassau Cty. Interim Fin. Auth.,
  730 F.3d 150 (2d Cir. 2013)....................................................................................................28

Celotex Corp. v. Catrett,
  477 U.S. 317 (1986)..................................................................................................................6

Chapman v. Pier I Imports (U.S.), Inc.,
  779 F.3d 1001 (9th Cir. 2015) .....................................................................................20, 21, 24

De La Rosa v. 600 Broadway Partners, LLC,
  13 Civ. 6390 (PGG), 2016 U.S. Dist. LEXIS 42272 (S.D.N.Y. March 30,
  2016) ................................................................................................................... *passim*

Design Strategy, Inc. v. Davis,
  469 F.3d 284 (2d. Cir. 2006)...................................................................................................29

Francis v. Lo-Do Corp.,
  No. 14 Civ. 5422 (KBF), 2014 U.S. Dist. LEXIS 173479 (S.D.N.Y. December
  5, 2014) .........................................................................................................................25, 26

Valencia ex rel. Franco v. Lee,
  316 F.3d 299 (2d Cir. 2003)...................................................................................................28

Gilkerson v. Chasewood Bank,
  1 F. Supp. 3d 570, 589 (S.D. Tex. 2014) ...................................................................20, 21, 24

Giordano v. City of New York,
    274 F.3d 740 (2d Cir. 2001)..................................................................................9

Harnett v. Fielding Graduate Institute,
    400 F. Supp. 2d 570 (S.D.N.Y. 2005)..............................................................26, 27

Harris v. Stonecrest Care Auto Center,
    472 F. Supp. 2d 1208 (S.D. Cal. 2007)..................................................................8

Kolari v. New York Presbyterian Hospital,
    455 F.3d 118 (2d Cir. 2006)................................................................................28

Kravtsov v. Town of Greenburgh,
    10 Civ. 3142 (CS), 2012 U.S. Dist. LEXIS 94819 (S.D.N.Y. July 9, 2012)............................9

Kreisler v. Second Ave. Diner Corp.,
    10 Civ. 7592 (RJS), 2012 U.S. Dist. LEXIS 129298 (S.D.N.Y. September 10,
    2012) aff'd, 2013 U.S. App. LEXIS 19642 (2d. Cir. September 25, 2013) ................... *passim*

Kreisler v. Second Ave., Diner Corp.,
    731 F.3d 184 (2d Cir. 2013)...............................................................................7,9

Lieber v. Macy's West, Inc.,
    80 F. Supp. 2d 1065 (N.D. Cal. October 28, 1999) ....................................11, 13, 17

Lugo v. City of N.Y.,
    518 F. App'x 28 (2d Cir. 2013) ...........................................................................30

Lujan v. Defenders of Wildlife,
    504 U.S. 555 (1992)..........................................................................................6, 7

Meiri v. Dacon,
    759 F.2d 989 (2d Cir. 1985)................................................................................6

Midgett v. Tri-County Metro. Trans. Dist. of Or.,
    254 F. 3d 846 (9th Cir. 2001) ............................................................................20

Mohamed v. Marriott Int'l, Inc.,
    905 F.Supp. 141 (S.D.N.Y. 1995) .......................................................................27

Panzica v. Mas-Maz, Inc.,
    No. 05-Civ. 2595, 2007 U.S. Dist. LEXIS 42171 (E.D.N.Y. June 11, 2007) ........................26

Pickern v. Pier 1 Imports (U.S.) Inc.,
    339 F. Supp. 2d 1081 (E.D. Cal. 2004)............................................................22, 23

Pickern v. Pier 1 Imports (U.S.) Inc.,
    457 F.3d 963 (9th Cir. 2006) ..............................................................................22

Ritchie Risk-Linked Strategies Trading (Ireland), Ltd. v. Coventry First LLC,
   280 F.R.D. 147 (S.D.N.Y. 2012) ....................................................................29

Roberts v. Royal Atl. Corp.,
   542 F.3d 363 (2d Cir. 2008)................................................................ *passim*

Spotnana, Inc. v. Am. Talent Agency, Inc.,
   No. 09 Civ. 3698 (LAP), 2010 U.S. Dist. LEXIS 86457 (S.D.N.Y. Aug. 17,
   2010) ..............................................................................................................28

Swierkiewicz v. Sorema N.A.,
   534 U.S. 506 (2002)..................................................................................22, 23

Thomas v. West,
   No. 14 Civ. 4459 (LTS), 242 F. Supp. 3d 293, 305 (S.D.N.Y. March 15, 2017)...................25

Underpinning & Found. Skanska, Inc. v. Travelers Cas. & Sur. Co. of Am.,
   726 F. Supp. 2d 339 (S.D.N.Y. 2010) ...........................................................28

**Statutes**

28 U.S.C. § 1367(c) .................................................................................27, 28

Title III of the Americans with Disabilities Act 42 U.S.C. §§ 1181 et seq. .......................... *passim*

New York City Human Rights Law, New York City Administrative Code § 8-
   107, et seq. ..................................................................................... *passim*

New York State Human Rights Law, New York State Executive Law § 296, et
   seq. ................................................................................................ *passim*

New York State Civil Rights Law § 40 .........................................................1, 26, 27

**Other Authorities**

28 CFR Part 36 et seq ................................................................................. *passim*

36 CFR Part 1191 et seq. ............................................................................ *passim*

**Rules**

Fed. R. Civ. P. 8 ...........................................................................................22

Fed. R. Civ. P. 26 ................................................................................1, 3, 29

Fed. R. Civ. P. 37 .........................................................................................28

Fed. R. Civ. P. 56 .............................................................................1, 3, 6, 29, 30

FED. R. EVIDENCE 602.................................................................................................................1, 30

Defendant Dylan's Candybar, LLC ("Defendant" or "Dylan's") respectfully submits this Memorandum of Law in Support of its Motion for Summary Judgment and to Preclude Plaintiff from Presenting Testimony and Evidence in Opposing This Motion or at Trial.

## PRELIMINARY STATEMENT

Since 2016, the law firm of Parker Hanski LLC has filed at least eight other lawsuits in the U.S. District Court for the Southern District of New York on behalf of Plaintiff Steven Nachshen ("Plaintiff") targeting New York City businesses by alleging nearly identical claims to those asserted in the instant matter. Indeed, the complaints filed in each of these matters appear to be almost mirror images of each other. Under the guise of Title III of the Americans with Disabilities Act ("ADA"), the New York State Human Rights Law ("NYSHRL"), and the New York City Human Rights Law ("NYCHRL"), Plaintiff and his counsel transform the commendable purpose of each statute into a vehicle for generating legal fees and pushing an early settlement.

In the instant matter, Plaintiff, who allegedly is wheelchair bound, claims he was denied equal access to the Dylan's Candybar store located at 33 Union Square West, New York, New York (the "Store" or "Premises"), in violation of the ADA, the NYSHRL, the NYCHRL, and the New York State Civil Rights Law. Plaintiff also asserts a claim for common law negligence.

Plaintiff should be precluded from presenting any documents to oppose Dylan's motion for summary judgment or as evidence at trial based on his failure to identify any documents in his Initial Disclosures pursuant to Federal Rules of Civil Procedure ("FRCP") 26(A)(1) or in discovery in this case. Furthermore, pursuant to FRCP 56(c)(4) and Federal Rules of Evidence 602, Plaintiff and Plaintiff's expert witness should also be precluded from offering any evidence, in the form of testimony or an affidavit or declaration, regarding previous modifications that were made to the Store, Dylan's business, or the impact that Plaintiff's proposed barrier removals would have on Dylan's business because they lack personal knowledge of these matters.

Dylan's is entitled to summary judgment because Plaintiff has not presented any of the evidence necessary to establish the essential elements of his claims. Specifically, Plaintiff will be unable to establish: (1) he has standing to sue; and (2) that he is disabled within the meaning of the ADA. As such, his claims should be dismissed.

Plaintiff's ADA claims related to the removal of alleged architectural barriers leading into and within the Store also should be dismissed because:

- Plaintiff is unable to meet his burden of establishing that the sidewalk leading into the Store or the doorway were subject to an "alteration" or that the installation of the following elements of the Store constitute "alterations" under controlling case law:

  - Dylan's candy bins;
  - Dylan's customer iPads;
  - the merchandise located on Dylan's service counters;
  - Dylan's customer photo booth;
  - the customer dining tables; and
  - the equipment located under Dylan's water fountain.

- Plaintiff cannot establish the proposed modifications of the sidewalk and these internal elements are "readily achievable" because he has no evidence to establish: the cost of his proposed barrier removals; the financial resources of Dylan's; and the impact that his proposed barrier removals would have on Dylan's business. Accordingly, Plaintiff's claims related to these alleged barriers should be dismissed.

- Even if the installation of the candy bins constituted an "alteration," these bins are akin to shelves in a retail store, which are exempt from the reach range requirements set forth in the 2010 ADA Standards for Accessible Design ("2010 Standards").

- Even if the customer iPads are outside of an accessible reach range, they can be removed from their enclosures, and Dylan's employees provide customers with assistance upon request, thus satisfying the ADA.

- Plaintiff's claims regarding the circulation paths in the store and the clear space on the service counters in the Store also should be dismissed because neither alleged obstruction exists; and any alleged obstruction is merely temporary and, thus not an ADA violation.

- Claims raised for the first time in Plaintiff's Expert Report should be dismissed because Plaintiff failed to plead these alleged violations in his Complaint.

If the Court dismisses Plaintiff's ADA claims, it should decline to exercise

supplemental jurisdiction over Plaintiff s New York State and City Law claims.  However, if the

Court considers those claims, they should be dismissed for the same reasons that Plaintiff's ADA

claims should be dismissed.   Plaintiff's common law negligence claim should be dismissed

because the duty to design is a statutory duty, not a common law duty.

## PROCEDURAL AND FACTUAL BACKGROUND

Pursuant to FRCP 56 and the Local Rule 56.1, the undisputed material facts,

including the procedural history relevant to this Motion, are set forth in separately numbered

paragraphs in the accompanying Statement of Undisputed Material Facts ("SUMF"). [1]  Those facts

can be summarized as follows.

After Defendants filed Answers to the Complaint, the Parties attended an initial

scheduling conference before the Court.  (SUMF¶ 7).  The Court set a discovery schedule and

ordered Plaintiff to provide Defendants with signed medical records authorizations.  (SUMF¶¶ 8-

9).  Although the Parties exchanged Initial Disclosures pursuant to FRCP 26(A)(1), no other fact

discovery was conducted, and Plaintiff never provided Defendants with the signed medical records

authorization.  (SUMF¶¶ 8-12, 16).  Plaintiff states in his initial disclosures that he does not possess

any documents pertaining to this matter.  (SUMF¶10).  In July 2017, Plaintiff's expert conducted

---

[1] The SUMF is based, in part, on the following documents, copies of which are attached to the accompanying January 12, 2018 Affidavit of Jennifer B. Courtian in Support of Defendant's Motion for Summary Judgment ("Courtian Aff.") as Exhibits A through I, respectively:
- Plaintiff's Complaint – Exhibit A;
- Defendant Dylan's Answer to the Complaint – Exhibit B;
- Defendant Decker Associates LLC's Answer to the Complaint – Exhibit C;
- Plaintiff's Initial Disclosures pursuant to Federal Rule of Civil Procedure 26(A)(1) – Exhibit D;
- Letter dated May 12, 2017 sent by counsel for Defendant Dylan's to counsel for Plaintiff – Exhibit E;
- The Agreement dated June 9, 2017 entered into by the Parties regarding fact discovery – Exhibit F;
- Plaintiff's Expert Witness Disclosures Pursuant to Rule 26(A)(2) of the Federal Rules of Civil Procedure ("Plaintiff's Expert Report") – Exhibit G;
- Dylan's Expert Disclosure Pursuant to Rule 26(A)(2) of the Federal Rules of Civil Procedure ("Dylan's Expert Report") – Exhibit H; and
- Letter dated September 6, 2017 sent from Plaintiff's counsel jointly on behalf of the Parties to the Honorable Katherine Polk Failla – Exhibit I.

an inspection of the Store, and Plaintiff produced his Expert Report. (SUMF ¶ 14). Dylan's expert conducted inspections of the Store in April 2017 and August 2017, and Dylan's produced its Expert Report on August 23, 20017. (SUMF ¶15).

Plaintiff asserts that several architectural barriers deter him from patronizing the Store. (SUMF ¶ 4). Although Plaintiff's Expert Report sets forth recommendations for proposed remedial measures, Plaintiff fails to present any evidence regarding alterations made to the Store or address the nature and cost of each of the proposed remedial measures, the financial resources and size of the Store, and/or the impact that each proposed remedial measure would have on the Store and Dylan's. (SUMF ¶ 8-12, 16, 17).

Plaintiff claims that the sidewalk leading into the Store is inaccessible and recommends replacing the sidewalk. (SUMF ¶¶ 18-19). Dylan's Expert Report opines that it is likely technically infeasible and disproportionately costly to replace the sidewalk. (SUMF ¶ 21). No evidence has been produced that the sidewalk was ever altered. (SUMF ¶ 20).

Plaintiff contends that the highest drawers and scoops of the Store's wall mounted self-serve candy bins are outside the reach range specified in the 2004 ADA Accessibility Guidelines ("2004 ADAAG"). (SUMF ¶¶ 22-23). Plaintiff's expert recommends that Dylan's ensure that each type of candy has at least one bin and scoop within an accessible reach range. (SUMF ¶ 23). Dylan's expert disagrees with Plaintiff's expert's findings and contends that the 2004 ADAAG does not apply to the candy bins. (SUMF ¶ 24). He notes the Store staff members provide merchandise retrieval services to customers upon request, and there are signs displayed near the candy dispensers that advise customers they can request assistance from staff members, as needed. (SUMF ¶ 25).

Plaintiff contends the operable parts of the touch screens of the "personalize it" iPad tablets in the Store are too high above the floor and suggests that at least one of the tablets be lowered to within an accessible reach range. (SUMF ¶¶ 26-27). Dylan's expert disagrees on the grounds that the iPads can be removed from the enclosures upon request, and because Dylan's provides signage explaining that assistance is available to customers seeking to use the iPads. (SUMF ¶ 28).

Plaintiff claims that, in five places, the circulation paths between moveable floor displays and fixed elements such as walls, counters and a column are not at least 36 inches wide. (SUMF ¶¶ 29-30). Plaintiff's expert recommends increasing the width of circulation paths throughout the Store to 36 inches minimum. (SUMF ¶ 30). Dylan's expert denies that a violation exists and contends that all circulation paths are at least 36 inches wide. (SUMF ¶ 31). Dylan's expert contends that the moveable floor displays, by their very nature, move (SUMF ¶ 31), and that the ADA allows temporary interruptions in service or access due to maintenance or repairs. (SUMF ¶ 31). Dylan's staff members are available and trained to maintain aisle widths and move the floor displays, or retrieve merchandise, as needed by customers. (SUMF ¶ 31)

Plaintiff claims that four service counters located throughout the Store are obstructed by merchandise. (SUMF ¶¶ 32-33). Plaintiff's expert recommends that the merchandise be removed from the service counters so that sufficient accessible service counter space is provided. (SUMF ¶ 33). Dylan's expert, who visited the store twice, disagrees and notes that all of the counters are 34 inches high, and provide the same depth of use for all customers. (SUMF ¶ 34).

Plaintiff's Complaint does not mention several of the items mentioned in Plaintiff's Expert Report, such as the photo booth, knee and toe clearances at the water fountains, and outdoor

seating. (SUMF ¶¶¶ 32, 35, 37, 39).  Although Plaintiff claims that the entrance and exit door is

inaccessible, he presents no evidence establishing that the doorway was subject to "alterations" or

regarding, inter alia, the nature and costs of replacing the doorway or the impact that replacing the

doorway would have on the Store's business (SUMF 10, 41, 42).

## SUMMARY JUDGMENT STANDARD

To defeat a motion for summary judgment, a plaintiff must raise a genuine issue of

material fact. See FRCP 56(c).  "[T]he salutary purposes of summary judgment -- avoiding

protracted, expensive and harassing trials -- apply no less to discrimination cases than to . . . other

areas of litigation[.]" Meiri v. Dacon, 759 F.2d 989, 998 (2d Cir. 1985).    In Celotex Corp. v.

Catrett, the United States Supreme Court ruled that FRCP 56(c):

> mandates the entry of summary judgment, after adequate time for
> discovery and upon motion, against a party who fails to make a
> showing sufficient to establish the existence of an element essential
> to that party's case, and on which that party will bear the burden of
> proof at trial. In such a situation, there can be no genuine issue as to
> any material fact, since a complete failure of proof concerning an
> essential element of the nonmoving party's case necessarily renders
> all other facts immaterial.

Celotex Corp. v. Catrett, 477 U.S. 317, 322-323 (1986) (internal quotations omitted).  Under FRCP

56(e), a party opposing summary judgment may not rest upon the mere allegations or denials of

his pleading, but must set forth specific facts showing that there is a genuine issue for trial.

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

## ARGUMENT

**POINT I.**     **PLAINTIFF FAILS TO PRESENT ANY EVIDENCE THAT HE HAS STANDING TO PURSUE HIS CLAIMS.**

Plaintiff's claims should be dismissed in their entirety because Plaintiff fails to

present facts sufficient to establish he has standing to sue for equal access disability discrimination.

Plaintiff has the burden of establishing standing. Lujan v. Defenders of Wildlife, 504 U.S. 555,

561 (1992). "To satisfy constitutional standing requirements, a plaintiff must prove: (1) injury in fact, which must be (a) concrete and particularized, and (b) actual or imminent; (2) a causal connection between the injury and the defendant's conduct; and (3) that the injury is likely to be redressed by a favorable decision." De La Rosa v. 600 Broadway Partners, LLC, 13 Civ. 6390 (PGG), 2016 U.S. Dist. LEXIS 42272, at **10-11 (S.D.N.Y. March 30, 2016) (quoting Kreisler v. Second Ave., Diner Corp., 731 F.3d 184, 187 (2d Cir. 2013)). In the ADA Title III context, courts consider the following factors when determining whether a plaintiff has established standing to sue: "(1) [whether] the plaintiff alleged past injury under the ADA; (2) [whether] it was reasonable to infer that the discriminatory treatment would continue; and (3) [whether] it was reasonable to infer, based on the past frequency of plaintiff's visits and the proximity of defendants' [establishment] to plaintiff's home, that plaintiff intended to return to the subject location." Id. (citing Camarillo v. Carrolls Corp., 518 F.3d 153, 158 (2d. Cir. 2008)). At a minimum, in order to establish standing, plaintiffs seeking redress under Title III of the ADA "must at least prove actual knowledge of the barriers and show that they would visit the building in the imminent future but for those barriers." Access 4 All, Inc. v. G & T Consulting Co., LLC, 06 Civ. 13736 (DF), 2008 U.S. Dist. LEXIS 30594, at *4 (S.D.N.Y. March 28, 2008).

In the instant case, as no fact discovery has been conducted, Plaintiff has not presented and should be precluded from presenting any evidence regarding the past frequency of his visits to the Store, the proximity of the Store to his home, or that he intended to return to the Store but for the alleged barriers. He also has not produced any evidence that he possesses knowledge of any of the alleged barriers or that he intends to visit the Store in the imminent future. Given Plaintiff's failure to produce such evidence, he cannot establish he has standing, and his claims should be dismissed. De La Rosa, 2016 U.S. Dist. LEXIS 42272; Camarillo v. Carrolls

7

Corp., 518 F.3d 153; <u>Access 4 All, Inc.</u> 2008 U.S. Dist. LEXIS 30594.

   Moreover, in cases such as this one, where the Plaintiff has filed numerous ADA lawsuits with nearly identical allegations, the courts have evaluated the standing requirement with even greater scrutiny. <u>See Harris v. Stonecrest Care Auto Center</u>, 472 F. Supp. 2d 1208, 1215 (S.D. Cal. 2007).[2] As in the instant matter, in each of eight other cases filed by Parker Hanski, LLC on behalf of Plaintiff since 2016, to establish he has standing, Plaintiff vaguely asserts that he "frequently travels to the area where defendants' place of public accommodation is located" and "intends to patronize defendants' place of public accommodation several times a year after it becomes fully accessible." <u>See</u> Courtian Aff., Exhibit A, ¶¶ 31-32. Significantly, none of the Complaints in this or the other eight cases offer detail as to the frequency of Plaintiff's past visits to each property, the proximity of each property to Plaintiff's home, or Plaintiff's actual knowledge of the barriers that he alleges exist. The instant Complaint is similarly deficient, and no other evidence has been provided or should be permitted to augment the deficient Complaint. Based upon Plaintiff's failure to produce any evidence to establish standing, summary judgment is appropriate, and the Complaint should be dismissed in its entirety.

**POINT II.**  <u>**PLAINTIFF FAILED TO PRESENT SUFFICIENT EVIDENCE THAT HE IS DISABLED.**</u>

   Dylan's also is entitled to summary judgment because Plaintiff has failed to present evidence sufficient to establish he is disabled with meaning of the ADA. To prevail on a claim

---

[2]In addition to the instant matter, since 2016, Parker Hanski LLC has filed the following lawsuits in the Southern District of New York on behalf of this same Plaintiff: <u>Nachshen v. D.D.F. Corporation and the Desmond 433 Corp.</u>, 16 Civ. 03714 (PKC); <u>Nachshen v. John Davino and 192 TM Third Tavern LLC</u>, 17 Civ. 00147 (AJN); <u>Nachshen v. West 15th Street Owners, Inc. and Danny's Cycles NY, LLC</u>, 16 Civ. 03003 (LGS); <u>Nachshen v. Tishman Speyer Properties, L.P., RCPI Landmark Properties, LLC and Top of the Rock LLC</u>, 16 Civ. 01022 (ER)(SN); <u>Nachshen v. Daphne Realty Corp., TBB Tavern Corporation and House of Brews Management LLC</u>, 17 Civ. 04868 (SHS); <u>Nachshen v. 243 W 14th Street, LLC and HNJ NYC LLC</u>, 17 Civ. 02763 (AJN); <u>Nachshen v. Tres Three LLC and Kingfish Group LLC</u>, 17 Civ. 01583 (ER); and <u>Nachshen v. Unity Gallega East 11th Street LLC and Webster Hall Entertainment Corp.</u>, 16 Civ. 03713 (PAE).  Plaintiff's counsel has filed numerous other similar cases on behalf of other plaintiffs.

under Title III of the ADA, a plaintiff must establish: "(1) [that] he or she is disabled within the meaning of the ADA; (2) that the defendants own, lease, or operate a place of public accommodation; and (3) that the defendants discriminated against the Plaintiff within the meaning of the ADA." Kreisler v. Second Ave. Diner Corp., 10 Civ. 7592 (RJS), 2012 U.S. Dist. LEXIS 129298, *17-*18, (S.D.N.Y. September 10, 2012) aff'd, 2013 U.S. App. LEXIS 19642 (2d. Cir. September 25, 2013) (quoting Roberts v. Royal Atl. Corp., 542 F.3d 363, 368 (2d Cir. 2008)). The ADA defines disability as "a physical or mental impairment that substantially limits one or more of the major life activities" of the individual. Kravtsov v. Town of Greenburgh, 10 Civ. 3142 (CS), 2012 U.S. Dist. LEXIS 94819, *34 (S.D.N.Y. July 9, 2012) (citing Weixel v. Bd. of Educ., 287 F.3d 138, 147 (2d Cir. 2002)); 42 U.S.C. § 12102(1)(A).  In the instant case, aside from the bald assertions in the Complaint, Plaintiff has not presented any record evidence or testimony to establish he is disabled.  Furthermore, as set forth in Point VI, infra, given the proceeding in this case, Plaintiff should now be precluded from presenting any evidence regarding his alleged disability as he has failed to produce a single medical record confirming his disability. Significantly, Plaintiff failed to return to Defendant a signed medical records authorization that would have enabled Defendant to obtain copies of Plaintiff's medical records notwithstanding that the Court ordered Plaintiff to provide such a signed authorization.  (SUMF ¶¶ 9, 12).  Accordingly, Plaintiff cannot establish an essential element of his discrimination claims, and these claims should be dismissed.  Anderson, 477 U.S. at 248 (party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of his pleading).[3]

---

[3] Although the definitions of "disability" under the NYCHRL and NYSHRL are broader than under the ADA, see Giordano v. City of New York, 274 F.3d 740, 753 (2d Cir. 2001), since Plaintiff has not presented any record evidence or testimony, he also cannot establish that he is disabled under the NYCHRL and NYSHRL.

**POINT III.**   **PLAINTIFF'S ADA CLAIMS RELATING TO THE REMOVAL OF ALLEGED ARCHITECTURAL BARRIERS SHOULD BE DISMISSED AS A MATTER OF LAW.**

Title III of the ADA requires places of public accommodation to engage in the removal of architectural barriers to the extent removal of said barriers is "readily achievable." De La Rosa, 2016 U.S. Dist. LEXIS at *31; 42 U.S.C. §12181(b)(2)(A)(iv). "Readily achievable" is defined as "easily accomplishable and able to be carried out without much difficulty or expense." Kreisler, 2012 U.S. Dist. LEXIS at *19; 42 U.S.C. §12181(9). "Factors to be considered when determining if a proposed modification is readily achievable include: (1) the nature and costs of needed changes; (2) the financial resources of the facility, number of employees, effect on expenses and resources, and other impact on the facility; (3) the financial resources and size of the defendant; and (4) the type of operations at the facility and relationship between the facility and the defendant." Id. at *19-*20. See 42 U.S.C. §12181(9). "In order to make a prima facie showing that barrier removal is readily achievable, a plaintiff must 'articulate a plausible proposal for barrier removal, the costs of which, facially, do not clearly exceed its benefits'." Id. (quoting Roberts, 542 F.3d at 373). A plaintiff must provide at least some estimates of costs in order to meet his initial burden of proof. Id. at *20-21 (citing Roberts, 542 F.3d a 377-378).

In 1991, the United States Department of Justice adopted regulations interpreting Title III of the ADA known as the ADA Standards for Accessible Design ("1991 Standards"). See 28 CFR Part 36.[4] In 2010, the United States Department of Justice promulgated revised regulations applicable to Title III of the ADA, which adopted the 2010 ADA Standards for Accessible Design ("2010 Standards"). The 2010 Standards are comprised of both the Title III regulations set forth

---

[4] The ADA requires places of public accommodation that are "newly constructed" after January 26, 1993 to comply with the 1991 Standards. See 28 CFR Part 36.401. "Alterations" that were made to existing facilities after January 26, 1992 must also comply with the 1991 Standards. See 28 CFR Part 36.402.

at 28 CFR Part 36, subpart D, and the 2004 ADA Accessibility Guidelines ("2004 ADAAG") at 36 CFR Part 1191 Appendices B and D. Id. The 2010 Standards set minimum requirements –both scoping and technical- for newly constructed or "altered areas" of facilities to be considered readily accessible to, and usable by, individuals with disabilities. Id. Under the 2010 Standards, new construction or "alterations" made to a building that are completed before March 15, 2012 must comply with either the 1991 Standards or the 2010 Standards (collectively referred to as the "ADA Standards"). See Appendix to 28 CFR Part 36.406(a). Compliance with the 2010 Standards is mandatory for new construction or "alterations" that are completed on or after March 15, 2012. Id.

The areas of a building that were "altered" after January 26, 1992 or March 15, 2012, must comply with the 1991 Standards or the 2010 Standards, as appropriate, and be made accessible "to the maximum extent feasible" regardless of whether such barrier removal is "readily achievable." See Roberts, 542 F. 3d at 369; Lieber v. Macy's West, Inc., 80 F. Supp. 2d 1065, 1074 (N.D. Cal. October 28, 1999). Under this heightened standard for new construction and "alterations," the plaintiff bears the "initial burden of production identifying some manner in which the alteration could be, or could have been, made readily accessible and usable by individuals with disabilities." Id. If Plaintiff meets this burden, "the defendant then bears the burden of persuading the factfinder that the plaintiff's proposal would be 'virtually impossible' in light of the 'nature of the facility'." Id.; Lieber, 80 F. Supp. 2d at 1074. Significantly, the heightened requirements of the ADA Standards and the "virtually impossible" remedial standard only apply to those portions of a facility which have been "altered." De La Rosa, 2016 U.S. Dist. LEXIS at *29-31 (quoting Roberts, 542 F. 3d at 369); Lieber, 80 F. Supp. 2d at 1074; Kreisler, 2012 U.S. Dist. LEXIS at *18.

11

Accordingly, in order to determine whether a place of public accommodation has satisfied its Title III obligations, the Court first must determine whether it is newly constructed or has undergone "alterations" since January 26, 1993 or March 15, 2012. De La Rosa, 2016 U.S. Dist. LEXIS at *29.  "The determination of whether a facility has undergone an 'alteration' involves a fact-specific inquiry centered on a broad application of the concept of 'usability'." Id. at *29-*30. "Usability is to be 'read broadly to include any change that affects the usability of the facility, not simply changes that relate directly to access by individuals with disabilities'." Roberts, 542 F. 3d at 369.

The Second Circuit has provided the following non-exhaustive list of factors to consider in evaluating whether a modification to a specific area of a building constitutes an "alteration": "(1) the overall cost of the modification relative to the size (physical and financial) of the facility or relevant part thereof; (2) the scope of the modification (including what portion of the facility or relevant part thereof was modified); (3) the reason for the modification (including whether the goal is maintenance or improvement, and whether it is to change the purpose or function of the facility); [and] (4) whether the modification affects only the facility's surfaces or also structural attachments and fixtures that are part of the realty." De La Rosa, 2016 U.S. Dist. LEXIS at *30 (citing Roberts, 542 F3d at 369).  The Kreisler Court held that the following modifications to the interior of a building do **not** qualify as "alterations" sufficient to trigger the more onerous compliance obligations: (1) re-upholstering seats; (2) changing lights; (3) adding a drop ceiling; (4) installing an air conditioner; and (5) installing kitchen equipment.  Kreisler, 2012 U.S. Dist. LEXIS 129298 at *27-*28.

**Significantly, the plaintiff has the burden of production to establish whether an alteration to an area of a building occurred.** De La Rosa, 2016 U.S. Dist. LEXIS at *30

(emphasis added). "[A] plaintiff fulfills . . . her initial burden of production by identifying a modification to a facility and by making a facially plausible demonstration that the modification is an alteration. . . The defendant then bears the burden of persuasion to establish that that the modification is in fact not an alteration." Id. at 31 (quoting Roberts, 542 F.3d at 371). See also Kreisler, 2012 U.S. Dist. LEXIS at *29. If the plaintiff fails to meet his burden of establishing that an "alteration" to an area of the building has been made on or after January 26, 1993, the "readily achievable" standard applies in analyzing all remedial measures proposed by the plaintiff and determining whether the defendant must take those remedial measures. De La Rosa, 2016 U.S. Dist. LEXIS at *31.

When the "readily achievable" standard applies, but the removal of all barriers is not "readily achievable," a public accommodation still may satisfy its obligations under the ADA Standards by establishing it provided a reasonable alternative to barrier removal. See 28 CFR Part 36.305(b)(2); 42 U.S.C. §1282(b)(a)(v); Lieber, 80 F.S.2d at 1080.  28 CFR 36.305(b)(2) specifically recognizes that providing store staff to "retriev[e]] merchandise from inaccessible shelves or racks" is a reasonable alternative to barrier removal. Id.

## A.   Plaintiff's Claim Regarding The Sidewalk Leading Into The Store Should Be Dismissed.

Plaintiff's Complaint alleges the route from the sidewalk leading into the Store has running slopes in excess of 5.0% and that Defendants fail to provide an accessible walking surface with running slopes not more than 5%. (SUMF ¶¶ 4,18). Plaintiff's Expert Report similarly claims that the sidewalk leading into the Store has running slopes in excess of 1:12 (8.33%).  (SUMF ¶19).  Plaintiff's Expert Report recommends that Defendant implement the remedial measure of replacing the sidewalk with slopes that are less than 8.33%. (SUMF ¶ 19). Plaintiff's claim should be dismissed because Plaintiff fails to establish that this proposed remedial measure is "readily

achievable."

1.      **The "Readily Achievable" Standard Applies In Evaluating Plaintiff's Claim Regarding the Sidewalk.**

The "readily achievable" standard applies to Plaintiff's claim relating to the sidewalk because Plaintiff cannot meet his burden of establishing that alterations were made to the sidewalk leading into the Store.  While in its Answer, Defendant admits that it "made alterations to [the Store], located at 33 Union Square West", Defendant does not in any way admit it made any alterations to the sidewalk outside the Store. (SUMF ¶ 20).  Moreover, no discovery has been conducted and no testimony has been elicited that in any way relates to any renovations or "alterations" that were made to the Store or the sidewalk outside the Store.  (SUMF ¶ 16).  In opposition to Dylan's pre-motion letter, Plaintiff does not even assert that Dylan's made renovations to the sidewalk.[5]   Accordingly, in the absence of any discovery or deposition testimony, Plaintiff cannot meet his burden of establishing that alterations were made to the sidewalk leading into the Store. See De La Rosa, 2016 U.S. Dist. LEXIS at *30.

2.      **Plaintiff Fails to Establish That Replacing the Sidewalk is "Readily Achievable."**

Since there is no record evidence establishing that the sidewalk leading into the Store was subject to "alterations," the Court must apply the "readily achievable" standard in evaluating whether Defendant has violated the ADA by not taking the remedial measure proposed by Plaintiff. Id. at *31.  Under this standard, Plaintiff must both articulate a plausible proposal for barrier removal, the cost of which does not exceed the benefits, and provide at least some estimate of costs. Roberts, 542. F.3d at 373, 377-78; Kreisler, U.S. Dist. LEXIS at *19-*20.  Significantly, in order to make a prima facie showing that the barrier removal is "readily achievable," a plaintiff

---

[5] See Plaintiff's November 16, 2017 letter filed in opposition to Dylan's November 13, 2017 letter seeking permission to file a Motion for Summary Judgment, Docket No. 39 at page 2.

must provide at least some estimates of the costs of the proposed remedial measure.  Id. (citing Roberts, 542 F.3d a 377-378).

Here, Plaintiff has not presented evidence to establish that the proposed remedial measure of replacing the sidewalk satisfies the "readily achievable" standard.  Plaintiff's Expert Report recommends "replacing [the sidewalk] so that slopes are less than 8.33%." (SUMF ¶ 19). Yet, Plaintiff does not offer any evidence concerning:  (1) the nature and costs of replacing the sidewalk; (2) the financial resources of the Store, the number of employees of the Store, or the impact that replacing the sidewalk would have on the Store; and/or (3) the type of operations at the Store and the relationship between the Store and Dylan's Candybar, LLC.  Kreisler, 2012 U.S. Dist. LEXIS at *19.  In contrast, Dylan's Expert Report addresses the pertinent factors set forth in Kreisler and concludes that replacing the sidewalk is technically infeasible and disproportionately costly. (SUMF ¶ 21).  As such, Dylan's expert concludes that it is not clear whether constructing a ramp would be disproportionate to the costs of the alterations to the store. (SUMF ¶ 21).  Given that Plaintiff fails to satisfy his burden of establishing that replacing the sidewalk is "readily achievable," his claim related to the sidewalk should be dismissed.[6]

### B.  Plaintiff's Claims Regarding Candy Bins Should Be Dismissed As A Matter Of Law.

---

[6] Like Plaintiff's claim relating to the sidewalk leading into the Store, Plaintiff's claim related to the Store's doorway (SUMF ¶ 41) should be dismissed because Plaintiff fails to establish that replacing the door is "readily achievable."  Plaintiff's Complaint alleges the entrance to the Store, which is also the Store's exit, is inaccessible because the doorway lacks sufficient maneuvering clearances. (SUMF ¶ 41).  Plaintiff's Expert Report claims that the doorway lacks level maneuvering clearances and also alleges that the force for pulling open the door is in excess of five pounds. (SUMF ¶ 42).  Plaintiff's expert recommends that Defendant install an automatic door. (SUMF ¶ 42).  In the absence of any discovery or deposition testimony, Plaintiff cannot meet his burden of establishing that "alterations" were made to the Store's doorway. See De La Rosa, 2016 U.S. Dist. LEXIS at *30.  Since there is no record evidence establishing that the Store's doorway was subject to "alterations", the Court must apply the "readily achievable" standard in evaluating whether Defendant has violated the ADA by not taking the remedial measure proposed by Plaintiff. Id. at *3.  Since Plaintiff has not presented any evidence regarding the nature and costs of replacing the doorway, the impact that replacing the doorway would have on the Store's business, or other factors listed in Kreisler, supra, he fails to satisfy the "readily achievable" standard, and his claim related to the doorway should be dismissed. Kreisler, 2012 U.S. Dist. LEXIS at *19.

In the Complaint, Plaintiff claims that the candy bins in the Store are outside of an accessible reach range. (SUMF ¶ 22).  Plaintiff's Expert Report claims "the highest drawers and scoops of the wall mounted self-service candy bins are 55 inches about the floor" which is outside of the reach range specified in Sections 227.4 and 308.3.2 of the 2004 ADAAG, which was adopted by the 2010 Standards. (SUMF ¶ 23).  Plaintiff's Expert Report recommends that Dylan's ensure that each type of candy has at least one bin and scoop within accessible reach range. Id.  Plaintiff's claim regarding the candy bins should be dismissed as a matter of law because:  (1) the bins do not constitute an alteration and, as such, the "readily achievable" standard applies; (2) Plaintiff fails to establish that the proposed remedial measure is "readily achievable"; (3) even if the installation of the candy bins constitutes an "alteration," the sections of the 2004 ADAAG cited by Plaintiff's Expert are inapplicable, and the 2004 ADAAG does not require Defendant to ensure all candy bins are within reach range; and (4) Defendant satisfies the ADA because it provides a reasonable alternative to barrier removal.

### 1.    Plaintiff Cannot Establish That Replicating or Changing the Candy Bins is "Readily Achievable."

Plaintiff's proposed remedial measure concerning the candy bins should be evaluated under the "readily achievable" standard since Plaintiff cannot meet his burden of establishing that the installation of Dylan's candy bins constituted an "alteration" to the Store. De La Rosa at *29-31.  Indeed, Plaintiff has not conducted any discovery with respect to the factors set forth by the Second Circuit in Roberts, including the overall cost of installing the candy bins, the scope of the project in installing the bins relative to the size of the facility or, importantly, whether adding the bins affected the Store's surfaces or its structural attachments and fixtures that are part of the realty. Roberts, 542 F.3d at 369.  Since, Plaintiff cannot establish that the installation

of the candy bins constituted an "alteration" to the Store, Plaintiff's proposed remedial measure should be analyzed under the "readily achievable" standard. De La Rosa, supra.

Plaintiff's Expert Report recommends that all candy bins that are out of reach range be duplicated and placed within a reach range that satisfies the 2010 Standards. (SUMF ¶ 23). However, Plaintiff cannot establish that this proposed remedial measure is "readily achievable." Indeed, as with the claim that the sidewalk should be replaced, Plaintiff has no evidence to satisfy the Kreisler factors with respect to his claim that the candy bins should be replaced. Because Plaintiff cannot meet his burden of establishing that his proposed remedial measure with respect to the candy bins is "readily achievable," his claim should be dismissed. Id.[7]

### 2.   Even if the 2010 Standards Applied, They Do Not Require All the Candy Bins Be Placed Within Reach Range.

Even if the installation of the candy bins constituted an "alteration," the fact that some of the candy bins are not within reach range does not constitute a violation of the 2004 ADAAG or 2010 Standards. The reach range standards cited by Plaintiff's expert (Plaintiff's Expert cites to Section 227.4 of the 2004 ADAAG, which mandates compliance with Section 904.5 of the 2004 ADAAG) apply to "food service lines" in cafeterias and restaurants. See 36 CFR App. D to pt. 1191 §904.5; (SUMF ¶¶ 23 and 24). This section of the 2004 ADAAG does not mention shelves holding merchandise in a retail store. As Dylan's is not a cafeteria or restaurant with a "food service line," Sections 227.4 and 904.5 of the 2004 ADAAG do not apply in evaluating the accessibility of Dylan's candy bins. Instead, as set forth in Dylan's Expert Report, Dylan's more appropriately is classified as a retail store. (SUMF ¶ 24). Section 225.2.2 of the 2004 ADAAG (36 CFR App. B to pt. 1191 §225.2.2) clarifies that, "[s]elf-service shelves include, but are not

---

[7] Importantly, the ADA regulations explain that "the rearrangement of temporary or moveable structures, such as furniture, equipment or display racks is not readily achievable to the extent that it results in a significant loss of selling space." Lieber, 80 F. Supp. 2d at 1078.

limited to, library, **store**, or post office shelves." Id. (emphasis added).   As Dylan's is a retail store that sells candy and other merchandise, and the candy bins are used to shelve the candy, Section 225.2.2 sets forth the applicable standard.   Under Section 225.2.2, the candy bins need not comply with reach range requirements set forth in Section 904.5 of the 2004 ADAAG.   Id.   (SUMF ¶ 24). Accordingly, Plaintiff's claim that Dylan's candy bins are outside of accessible reach range should be dismissed.

**3.    Plaintiff's Claim Relating to the Candy Bins Also Should be Dismissed Because Dylan's Staff Provides Merchandise Retrieval Upon Request.**

As noted in Dylan's Expert Report, Dylan's maintains a policy whereby its employees provide merchandise retrieval to its customers upon request and displays signs near the candy bins advising customers of such. (SUMF ¶ 25).   Since Dylan's provides a reasonable alternative to barrier removal, it satisfies its obligations with respect to the candy bins, and Plaintiff's claim should be dismissed.   See 28 C.F.R. Part 36.305(b)(2).

**C.    Plaintiff's Claim Relating to the "Personalize It" iPads Should be Dismissed.**

Plaintiff claims that Dylan's iPads at the "personalize it" service counter are outside of an accessible reach range.   (SUMF ¶ 26).   Plaintiff's Expert Report opines that the operable part of the touch screens of the "personalize it" iPads tablets is 46 to 52 inches above the floor and suggests that at least one of the tablets be lowered to be no more than 48 inches above the floor. (SUMF ¶ 27).   This claim should be dismissed because: (1) Plaintiff cannot satisfy the "readily achievable" standard, and (2) the iPads can be removed from their enclosures upon request.

**1.    Plaintiff Cannot Establish That The Relief Sought is "Readily Achievable."**

Plaintiff cannot establish that the installation of the iPads constituted an "alteration" to the Store based on the factors set forth by the Second Circuit in Roberts.   Roberts 542 F.3d at

18

371.  Indeed, Plaintiff has not conducted discovery or produced any evidence regarding the overall cost of installing the iPads, the scope of the project of installing the iPads, the reason for the iPads or, most importantly, whether adding the iPads affected the Store's surfaces or its structural attachments. Id.  Accordingly, Plaintiff's proposed remedial measure must be evaluated under the "readily achievable" standard. De La Rosa, 2016 U.S. Dist. LEXIS at *31.  Plaintiff also cannot establish that his proposed remedial measure of lowering one of the iPads is "readily achievable." Significantly, Plaintiff has not produced any evidence regarding, inter alia, the nature and cost of moving the iPads, the financial resources of the Store, or the impact of moving the iPads on Dylan's business. Kreisler, 2012 U.S. Dist. LEXIS at *19-*20.  As such, Plaintiff cannot meet his burden of establishing that moving the iPads is "readily achievable" and his claim should be dismissed. Id.

**2.      Plaintiff's Claim Related to the iPads Also Should be Dismissed Because the iPads Can be Removed From Their Enclosures, Upon Request.**

As noted in Defendant's Expert Report, the iPads can be removed from their enclosures upon request, and  Dylan's provides signage explaining that assistance is available to customers seeking to use the iPads.  (SUMF ¶ 28).  As the ADA Standards allow for alternatives to barrier removal (see 28 CFR Part 36.305(b)(2)), Dylan's has satisfied its obligations under the ADA, and Plaintiff's claim related to the iPads should be dismissed.

**D.      Plaintiff's Claim Relating to the Routes Inside the Store Should Be Dismissed.**

Plaintiff's Complaint claims that that the routes through the Store are not accessible because they are less than 36 inches wide.  (SUMF ¶ 29).  Plaintiff's Expert Report opines that the circulation paths between merchandise inside the Store are not accessible because, in five places, the circulation paths between **moveable floor displays** and fixed elements such as walls, counters

and a column are not at least 36 inches wide. (SUMF ¶ 30) (emphasis added). Plaintiff's expert recommends increasing the width of circulation paths throughout the Store to 36 inches minimum. Id. This claim should be dismissed because the ADA allows for temporary interruptions in access or service.

Pursuant to 28 CFR pt. 36, app. A, §4.3.3, "[t]he minimum clear width of an accessible route shall be 36 in[ches]." However, this standard applies directly to architectural barriers and not to temporary or moveable obstructions. See Kirola v. City & County of San Francisco, 74. F. Supp. 3d 1187, 1241-42 (N.D. Cal. 2014) (citing Sharp v. Islands Rest., 900 F. Supp. 2d 1114, 1126-27 (S.D. Cal. 2012) (misplaced chairs blocking the path of travel to a restroom were not architectural barriers under the ADA)). Thus, an "isolated or temporary hindrance to access does not give rise to a claim under the ADA." Chapman v. Pier I Imports (U.S.), Inc., 779 F.3d 1001, 1008 (9th Cir. 2015); Gilkerson v. Chasewood Bank, 1 F. Supp. 3d 570, 589 (S.D. Tex. 2014) ("an isolated or temporary hindrance to access does not give rise to a claim under the ADA"); Midgett v. Tri-County Metro. Trans. Dist. of Or., 254 F. 3d 846, 849 (9th Cir. 2001) ("regulations implementing the ADA do not contemplate perfect service").

Dylan's expert visited the Store on two separate occasions, April 13, 2017 and August 10, 2017. (SUMF ¶¶ 15, 31). Dylan's Expert Report states that all circulation paths inside the Store are 36 inches wide. (SUMF ¶ 31). Dylan's Expert further opines that the moveable floor displays inside the Store, by their very nature, move. (SUMF ¶ 31). He notes that the ADA allows for temporary interruptions in service or access due to maintenance or repairs. (SUMF ¶ 31). Significantly, Plaintiff's Expert only visited the Store on one occasion, July 10, 2017. (SUMF ¶ 14). As Plaintiff's expert has only visited the Store on one occasion, Plaintiff cannot establish that any alleged obstruction caused by a moveable floor display was anything more than "an isolated

or temporary hindrance to access," which "does not give rise to a claim under the ADA." Chapman,
779 F.3d at 1008; Gilkerson, 1 F. Supp. 3d at 589.  Indeed, Plaintiff has presented no evidence or
testimony to establish that the alleged obstructions caused by moveable floor displays happened
on more than one occasion.

      This claim also should be dismissed because there is no evidence that the moveable
floor displays were placed in the aisles as a routine matter by Dylan's staff, see Kirola, supra, and
because Dylan's staff is available and trained to monitor the Store and maintain 36" aisle widths
and ensure that passageways are not obstructed and that any interruptions to access are temporary
and isolated.  Moreover, Dylan's Staff members are trained to move floor displays and retrieve
merchandise, as needed by customers.  (SUMF ¶ 31).  As such, Plaintiff is unable to establish that
any obstruction caused by the moveable floor displays is anything more than a temporary or
isolated hindrance, and this claim related to the circulation paths should be dismissed.

    E.    **Plaintiff's Claims Regarding The Service Counters, the Photo Booth,
the Dining Surfaces and the Water Fountain Should be Dismissed.**

      Plaintiff's Expert Report asserts that four separate service counters contain
merchandise which obstructs the surface such that the portion of the service counter to the side of
the POS machine is not sufficiently wide pursuant to Sections 227 and 904 of the 2004 ADAAG.
(SUMF ¶ 33).  To address this alleged barrier, Plaintiff's expert recommends that the merchandise
be removed from the service counters so that sufficient accessible service counter space is
provided.  (SUMF ¶ 33).[8]  Plaintiff's Expert Report also claims Dylan's should replace the
customer photo booth and outdoor dining surfaces, and relocate the equipment located under the
water fountain at the rear of the Store.  (SUMF ¶¶ 36, 38, 40).  These claims should be dismissed

---

[8] Dylan's Expert Report states that "All of the counters are 34 inches high, and provide the same depth of use for all
customers."  (SUMF ¶ 34).

because: (1) Plaintiff did not plead any of these alleged violations in his Complaint; (2) Plaintiff cannot establish that the remedial measures he proposed are "readily achievable;" (3) Plaintiff cannot prove that any alleged obstruction caused by merchandise on the service counters was anything more than a temporary or isolated occurrence; and (4) the service counters comply with the 2010 Standards.

1.  **Plaintiff's Complaint Is Devoid of Allegations Regarding the Service Counters, Photo Booth, Dining Surfaces and Equipment under the Water Fountain.**

Pursuant to FRCP 8, a complaint must "give the defendant fair notice of what the plaintiff's claim is and grounds upon which it rests." Swierkiewicz v. Sorema N.A., 534 U.S. 506, 512 (2002). A plaintiff asserting claims under Title III of the ADA may only seek relief for claims set forth in the complaint or an amended complaint. Pickern v. Pier 1 Imports (U.S.) Inc., 339 F. Supp. 2d 1081 (E.D. Cal. 2004). In Pickern, the District Court prohibited the plaintiff from raising "newly-asserted ADA violations" that were not encompassed by the Complaint and were not raised by amendment of the Complaint. Id. at 1088. Specifically, the District Court disregarded a site inspection report that the plaintiff prepared after the filing of the complaint that contained additional violations because the plaintiff did not amend the complaint to include those additional alleged violations. Id. The Ninth Circuit affirmed the District Court's decision dismissing all of the claims not specifically alleged in the Complaint, holding that the plaintiff's allegations "were not part of the original complaint" and thus the defendant was not provided with fair notice of the claims. Pickern v. Pier 1 Imports (U.S.) Inc., 457 F.3d 963, 968-69 (9th Cir. 2006).

While Plaintiff's Expert Report now states that four (4) service counters in the Store do not have sufficient clear space to comply with the 2010 ADA Standards because they are obstructed by merchandise, Plaintiff's Complaint does not mention these alleged barriers. (SUMF ¶ 32; Courtian Aff., Exhibit A). As such, Plaintiff's claims related to the service counters should

be dismissed.  Similarly, Plaintiff's Complaint does not mention barriers concerning the photo booth, the dining surfaces and the water fountain.  (SUMF ¶¶ 35, 37 and 39).  See Courtian Aff., Exhibit A.  As such, any claim related to these alleged barriers raised for the first time in Plaintiff's Expert Report should be dismissed.  See Swierkiewicz, 534 U.S. 506; Pickern, 339 F. Supp. 2d 1081.

### 2.   Plaintiff Cannot Establish That His Proposed Remedial Measures are "Readily Achievable."

Plaintiff cannot establish that the placement of merchandise on Dylan's service counters,[9] the installation of a customer photo booth and outdoor dining tables and the location of equipment under the water fountains constitute "alterations" to the Store.  Indeed, Plaintiff has not conducted any of the discovery needed to establish that the installation of these elements constituted "alterations," in accordance with the standards set forth by the Second Circuit in Roberts.  Roberts, 542 F.3d at 371; 28 CFR Part 36.402(b)(1).  As such, Plaintiff's proposed barrier removals must be evaluated under the "readily achievable standard."  De la Rosa, 2016 U.S. Dist. LEXIS at *31.

Plaintiff's expert proposes the remedial measures of removing the merchandise from the service counters, replacing the photo booth and dining surfaces, and relocating the equipment located under the water fountain.  (SUMF ¶¶ 33, 36, 38 and 40).  Yet, Plaintiff has not and cannot produce any evidence regarding the Kreisler factors in connection with these remedial measures.  Kreisler, 2012 U.S. Dist. LEXIS at *19-*20.  As such, even if Plaintiff had properly pled these claims in his Complaint, which he did not, he cannot satisfy his burden of establishing that the proposed barrier removals are "readily achievable," and these claims should be dismissed.

---

[9] Plaintiff's Expert Report does not state the counters themselves are inaccessible, but instead states that the counters are inaccessible because they are blocked by merchandise. (SUMF ¶ 33).

3.      **Even if the 2010 Standards Applied to the Service Counters,
There is No Evidence of Any Violation**

The 2010 Standards do not apply in analyzing whether the service counters comply
with the ADA because these counters and, more importantly, the alleged merchandise on them, do
not constitute "alterations." Even if the 2010 Standards applied, Defendant has complied with
Section 904 of the 2004 ADAAG.   Section 904 requires at least one type of each transaction
counter in a store to be a maximum of 38 inches high and provide the same depth of use for all
customers.  See 36 CFR App. D to pt. 1191 §904.  Plaintiff's Expert Report opines that the service
counters are inaccessible because they are obstructed by merchandise. (SUMF ¶ 33).   He
recommends that Dylan's remove merchandise from each counter so that sufficient clear space is
provided. (SUMF ¶ 33).  However, since Plaintiff's expert only visited the Store on one occasion,
July 10, 2017, he cannot establish that any alleged obstruction caused by merchandise placed on
service counters was anything more than "an isolated or temporary hindrance to access," which
"does not give rise to a claim under the ADA." Chapman, 779 F.3d at 1008; Gilkerson, 1 F. Supp.
3d at 589.   Indeed, there has been no evidence or testimony presented that these alleged
obstructions caused by merchandise happened more than once.

In contrast, Dylan's expert visited the Store on two separate occasions, April 13,
2017 and August 10, 2017.  (SUMF ¶ 15, 31).  Dylan's expert found, "All of the counters are 34
inches high, and provide the same depth of use for all customers." (SUMF ¶ 34).  As such, Plaintiff
is unable to establish that the obstruction caused by the merchandise that his expert allegedly
encountered on only one occasion, was anything more than a temporary or isolated hindrance, and
his claim related to the service counters should be dismissed.

4.      **Dylan's Service Counters Comply with the 2010 Standards.**

Dylan's Expert Report contends that all of Dylan's service counters are 34 inches

high and provide the same depth of use for all customers. (SUMF ¶ 34). Moreover, Dylan's expert found that all transactions, services and activities can be conducted at any counter, except for the rear Creamery counter which does not have a cash register and is scheduled to be removed. (SUMF ¶ 34). Significantly, Section 904 of the 2004 ADAAG only requires at least one of each type of transaction counter to be 38 inches high maximum and provide the same depth for all customers. See 36 CFR App. D to pt. 1191 §904. As each of Dylan's service counters provides the same type of transactions and services, only one of its counters is required to meet the requirements of the 2004 ADAAG. Since Dylan's provides several service counters that meet the 2010 Standards, Plaintiff's claims related to these counters should be dismissed.

**POINT IV.**   **PLAINTIFF'S COMMON LAW NEGLIGENCE CLAIM SHOULD BE DISMISSED.**

Plaintiff's common law negligence claim is premised solely on the allegation that "Defendants negligently designed, constructed, operated, repaired and maintained [the Store] . . . in a manner that has rendered [the Store] unsafe to [Plaintiff]." Courtian Aff., Exhibit A at ¶ 84. A plaintiff may not establish a common law negligence claim based purely on a failure to design a place of public accommodation in accordance with federal or state statutes, absent injury beyond the Plaintiff's inability to fully access the place of public accommodation. Thomas v. West, No. 14 Civ. 4459 (LTS), 242 F. Supp. 3d 293, 305 (S.D.N.Y. March 15, 2017). In Francis v. Lo-Do Corp., No. 14 Civ. 5422 (KBF), 2014 U.S. Dist. LEXIS 173479, at *3 (S.D.N.Y. December 5, 2014), the Court dismissed the plaintiff's common law negligence claim ruling:

> For her common law negligence claim, plaintiff only alleges that defendants "negligently designed, constructed, operated, repaired and maintained their place of public accommodation" in a manner "'inaccessible to the disabled plaintiff." **The duty to design, however, is a statutory duty and not a common law duty.** Plaintiff's mere allegation that she was "unable to enjoy full and equal access to defendants' place of public accommodation" is insufficient.

Id. (emphasis added).  As in Francis, in the instant matter, since the injuries asserted by Plaintiff can be remedied by his ADA, NYSHRL and NYCHRL claims, Plaintiff's common law negligence claims should be dismissed.

**POINT V.**     **PLAINTIFF'S CLAIMS ARISING UNDER NEW YORK STATE AND CITY LAW SHOULD BE DISMISSED.**

        **A.**     **Plaintiff's NYSHRL and NYS Civil Rights Law Claims Should Be Dismissed for the Same Reasons as the ADA Claims.**

Plaintiff's claims pursuant to the NYSHRL regarding alleged architectural barriers should be dismissed for the same reasons that apply to his ADA claims.  The relevant provisions of the NYSHRL are interpreted in a manner similar to the provisions of the ADA. See Kreisler, 731 F.3d at *38 (citing Camarillo v. Carrols Corp., 518 F.3d 153, 158 (2d Cir. 2008)); Panzica v. Mas-Maz, Inc., No. 05-Civ. 2595 (ARL), 2007 U.S. Dist. LEXIS 42171 (E.D.N.Y. June 11, 2007) (citing Harnett v. Fielding Graduate Institute, 400 F. Supp. 2d 570, 581 (S.D.N.Y. 2005) (claims for disability discrimination arising under the NYSHRL are governed by the same legal standards as federal ADA claims)).  Significantly, both the ADA and NYSHRL apply the "readily achievable" standard to proposed barrier removals in areas of a building that were not subject to "alterations." Kreisler, 731 F.3d at *38.  For the reasons set forth in Point III, supra, Plaintiff fails to establish that the proposed barrier removals are "readily achievable," and his NYSHRL claims should be dismissed.

Similarly, Plaintiff's claims pursuant to the New York State Civil Rights Law Section 40-c should be dismissed because this statute only provides damages if the plaintiff proves discrimination pursuant to the NYSHRL. See N.Y. C.V.R. § 40-c.  Since Plaintiff cannot establish he was discriminated against pursuant to the NYSHRL, Dylan's cannot be held liable under the New York State Civil Rights Law. Panzica, 2007 U.S. Dist. LEXIS at *29 (citing Harnett, 400 F.

Supp. 2d at 581 (claims for disability discrimination arising under the New York Civil Rights Law Section 40-c are governed by the same legal standards as federal ADA claims)).

## B.   Plaintiff's NYCHRL Claims Should Be Dismissed.

The NYCHRL provides that "any person prohibited by the provisions of this section from discriminating on the basis of disability shall make reasonable accommodations to enable a person with a disability to . . . enjoy the right or rights in question provided that the disability is known or should have been known to the covered entity. N.Y.C. Admin. Code § 8-107(15)(a). "Reasonable accommodation" means such accommodation that can be made that shall not cause undue hardship in the conduct of the covered entity's business. Id. at § 8-102(18). "Factors to be considered in establishing an undue hardship include the cost of the accommodation, the facility's size and resources, and the type of operations at the facility." Id. Here, Plaintiff will not be able to refute Defendant's argument that the proposed remedial measures would impose an "undue hardship" on Defendant. Indeed, Plaintiff cannot present any evidence regarding the cost of his proposed remedial measures or the size and resources of Dylan's.  As such, Plaintiff's NYCHRL claims should be dismissed. See Harnett, 400 F. Supp. 2d at 581 (citing Rodal v. Anesthesia Group of Onodaga, P.C., 369 F.3d 113, 117 n.1 (2d Cir. 2004)). See also Mohamed v. Marriott Int'l, Inc., 905 F.Supp. 141, 157 (S.D.N.Y. 1995) (claims for disability discrimination arising under the NYCHRL are governed by the same legal standards as federal ADA claims).

## C.   This Court Should Decline to Exercise Supplemental Jurisdiction Over Plaintiff's State and City Law Claims.

If the Court dismisses Plaintiff's ADA claims, then the Court should decline to exercise supplemental jurisdiction over Plaintiff's NYSHRL, NYCHRL and New York State Civil Rights Law claims.  In cases in which both federal, state, and city claims are pled, 28 U.S.C. § 1367(c) provides that a district court may decline to exercise supplemental jurisdiction over a claim

when the district court has dismissed all claims over which it has original jurisdiction. <u>See</u> 28 U.S.C. § 1367(c); <u>Carter v. Nassau Cty. Interim Fin. Auth.</u>, 730 F.3d 150, 152 (2d Cir. 2013). The decision whether to exercise supplemental jurisdiction is a discretionary one left to the district court. <u>Kolari v. New York Presbyterian Hospital</u>, 455 F.3d 118, 122 (2d Cir. 2006). In determining whether to decline jurisdiction, a district court should "balance[] the traditional 'values of judicial economy, convenience, fairness, and comity.'" <u>Id.</u> (quoting <u>Carnegie-Mellon University v. Cohill</u>, 484 U.S. 343, 350, (1988)). Although § 1367(c) is "permissive rather than mandatory[,] . the district court's discretion . . is not boundless." <u>Valencia ex rel. Franco v. Lee</u>, 316 F.3d 299, 305 (2d Cir. 2003). The United States Supreme Court has ruled, "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." <u>Cohill</u>, 484 U.S. at 350 n.7; <u>Kolari</u>, 455 F.3d at 124 (collecting cases). Accordingly, if the Court dismisses Plaintiff's ADA claims, the Court should decline to continue to exercise supplemental jurisdiction over Plaintiff's State and City claims and dismiss them as well.

**POINT VI.**   <u>**PLAINTIFF SHOULD BE PRECLUDED FROM PRESENTING ANY DOCUMENTS TO OPPOSE THIS MOTION OR AT TRIAL.**</u>

"If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." <u>See</u> FRCP 37(c)(1); <u>Spotnana, Inc. v. Am. Talent Agency, Inc.</u>, No. 09 Civ. 3698 (LAP), 2010 U.S. Dist. LEXIS 86457, at *2 (S.D.N.Y. Aug. 17, 2010); <u>Underpinning & Found. Skanska, Inc. v. Travelers Cas. & Sur. Co. of Am.</u>, 726 F. Supp. 2d 339, 348 (S.D.N.Y. 2010). In considering whether to exclude evidence under this standard, courts refer to a nonexclusive list of four factors:

(1) the party's explanation for its failure to disclose, (2) the importance of the evidence, (3) the prejudice suffered by the opposing party, and (4) the possibility of a continuance.  See Design Strategy, Inc. v. Davis, 469 F.3d 284 at 294 (2d. Cir. 2006) (citing Patterson v. Balsamico, 440 F.3d 104, 117 (2d Cir. 2006)).  The party that violates Rule 26 bears the burden of showing that its violation was either substantially justified or harmless.  Ritchie Risk-Linked Strategies Trading (Ireland), Ltd. v. Coventry First LLC, 280 F.R.D. 147, 159 (S.D.N.Y. 2012).

Here, Plaintiff's Initial Disclosures Pursuant to FRCP 26(A)(1) ("Plaintiff's Initial Disclosures") state, "Plaintiff does not possess documents, electronically stored information, or tangible things that may be used to support claims or defenses." (SUMF ¶ 10).  Indeed, to date, Plaintiff has not produced to Defendants a single document as part of discovery in this case. (SUMF ¶ 16).  Plaintiff cannot justify his failure to disclose any documents as required by Rule 26(a) since the Parties did not stipulate to staying fact discovery until after the initial disclosures were exchanged.  Furthermore, Defendant would be greatly prejudiced if Plaintiff is permitted to present documents to oppose this Motion or at trial since it has not had an opportunity to conduct further discovery concerning the documents including discovery regarding their source and authenticity.  As such, Plaintiff should be precluded from using any documents to oppose this motion or as evidence should this case proceed to trial.

**POINT VII.   PLAINTIFF AND HIS EXPERT SHOULD BE PRECLUDED FROM OFFERING ANY EVIDENCE ABOUT WHICH THEY LACK PERSONAL KNOWLEDGE.**

To defeat Defendants' Motion, Plaintiff may only rely on material "that would be admissible in evidence." FRCP 56(c)(2). Consistent with this requirement, a plaintiff's own sworn statement in support of his opposition to a motion for summary judgment "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that [Plaintiff] is competent to testify on the matters stated." FRCP 56(c)(4).  See also Burnett v. Océ N. Am.,

No. 11 Civ. 6894 (ER), 2014 U.S. Dist. LEXIS 133674, at *12 n.1 (S.D.N.Y. Sep. 11, 2014); Lugo v. City of N.Y., 518 F. App'x 28, 30 (2d Cir. 2013).  Where a plaintiff fails to properly support his factual assertions, or refute the defendant's factual assertions with admissible evidence, the Court may "consider the fact [asserted by defendant] undisputed for purposes of the motion" or "grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it."  FRCP 56(e)(2)-(3).

Under Federal Rules of Evidence 602, "[a] witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter."  See F.R.E. 602.  Here, Plaintiff only has identified himself and his expert as witnesses in the case. (SUMF ¶¶ 10, 14).  As neither Plaintiff nor his expert witness have personal knowledge about the modifications made to the Store prior to its opening, the financial resources and business of the Store and Dylan's in general, or the impact that Plaintiff's proposed barrier removals would have on the Store, they should be precluded from offering any evidence, in the form of testimony, an affidavit or documents, regarding these issues either to oppose this Motion or at trial.[10]  As such, Plaintiff will be unable to establish the essential elements of his claims.

## CONCLUSION

For the reasons set forth herein, Dylan's respectfully requests that its Motion be granted and that the Court dismiss the Complaint in its entirety with prejudice and grant such other and further relief as the Court deems just and proper.

---

[10] Significantly, Plaintiff cannot present any documents addressing the factors outlined by the Second Circuit in Roberts to evaluate whether a modification to the Store constitutes an "alteration." Roberts, 542 F. 3d at 369.  Plaintiff will be unable to present any documents or testimony addressing the scope or overall costs of the previous modifications made to the Store relative to Dylan's financial resources, the reasons for the modifications and whether the modifications impacted the Store's surfaces or structural attachments and fixtures. Id.  Similarly, Plaintiff will be unable to present any documents or testimony addressing the factors outlined by the Second Circuit to use in evaluating whether a proposed barrier removal is "readily achievable," such as the nature and costs of the proposed changes, the financial resources of the Store, the number of employees, or the impact of the proposed changes on Defendant's business. Id. at 373.